**In the Matter of T.L.V., a Juvenile.**

**No. 08–03–00187–CV.**

Court of Appeals of Texas, El Paso.

Aug. 5, 2004.

M. Clara Hernandez, El Paso County Public Defender, El Paso, for Appellant.

Jose R. Rodriguez, County Attorney, El Paso, for Appellee.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

T.L.V., a juvenile, appeals from the juvenile court's adjudication and commitment orders. We affirm.

## FACTUAL SUMMARY

On September 14, 1999, the State filed a petition alleging that Appellant engaged in delinquent conduct by committing the offenses of theft and aggravated assault with a deadly weapon. The State abandoned the theft allegation and Appellant stipulated that he had committed terroristic threat, a misdemeanor. At the subsequent disposition hearing, the juvenile court placed Appellant on out-of-home supervised probation at the Campbell Griffin Residential Treatment Center until his eighteenth birthday. Following a review hearing on June 14, 2000, the juvenile court continued Appellant on out-of-home supervised probation at the El Paso Center for Children. On May 15, 2001, the State filed a motion to modify disposition based on allegations that Appellant had violated the terms and conditions of supervised probation by violating curfew, failing to participate in family counseling sessions, being dismissed from his community improvement program for violation of rules, and being unsuccessfully discharged from the El Paso Center for Children/Therapeutic Foster Care Program for failure to abide by rules and regulations. The juvenile court found that the evidence sustained the allegations and it entered a new disposition order removing Appellant from the Children's Center and placing him in the SHOCAP intensive probation program.

On February 7, 2002, the State filed a petition alleging that Appellant had engaged in delinquent conduct by committing assault and possession of marihuana within 1,000 feet of a school. Based on a stipulation, the juvenile court dismissed the assault count but entered an adjudication of delinquency based on a finding that Appellant had possessed marihuana. The juvenile court continued Appellant on SHOCAP probation and placed him in the Challenge boot camp program. The court later amended the probation order and placed Appellant in his mother's home.

On March 20, 2003, the State filed a new petition alleging Appellant had engaged in delinquent conduct by committing burglary of a habitation, but based on a stipulation, the State amended the petition to allege trespass rather than burglary. The juvenile court entered an adjudication of delinquent conduct based on the stipulation. On April 9, 2003, the juvenile court conducted a disposition hearing and entered an order committing Appellant to the Texas Youth Commission. Appellant filed a timely notice of appeal.

## SIGN LANGUAGE INTERPRETER

In his sole issue on appeal, Appellant complains that the trial court erred by conducting the adjudication and disposition hearings without a qualified sign language interpreter for N.V., the juvenile's hearing-impaired mother, who attended both hearings. He alleges that the trial court's failure to appoint an interpreter for N.V. violated the due process and due course of law clauses of the federal and state constitutions because it effectively removed her from the hearings. He also argues that appointment of an interpreter is required by Article 38.31 of the Code of Criminal Procedure and Section 21.005 of the Texas Civil Practice and Remedies Code.

█ Appellant does not dispute that he interpreted for N.V. at the adjudication hearing or that Appellant's mother brought her own interpreter to the disposition hearing, but he argues that the juvenile court was nevertheless required to appoint a *qualified* interpreter for his mother. Texas courts have long recognized that in proceedings where child custody is to be adjudicated and parental rights affected, parents must be allowed a full hearing to protect their rights. *In the Matter of Honsaker*, 539 S.W.2d 198, 200

(Tex.Civ.App.-Dallas 1976, writ ref'd n.r.e.), *citing DeWitt v. Brooks,* 143 Tex. 122, 182 S.W.2d 687, 691 (1944). Furthermore, it is a basic principle of the Juvenile Justice Code that every child who appears before the juvenile court must have the assistance of some friendly, competent adult who can supply the child with support and guidance. *In the Matter of J. S.,* 602 S.W.2d 585, 590 (Tex.Civ.App.-Amarillo 1980, no writ); *Honsaker,* 539 S.W.2d at 200–01. To this end, the Juvenile Justice Code requires parents to attend a number of hearings affecting the child, including adjudication and disposition hearings. *See* TEX.FAM.CODE ANN. § 51.115(a)(Vernon 2002). If a parent or guardian fails to attend, the juvenile court must appoint a guardian *ad litem* for the juvenile. *See* TEX.FAM.CODE ANN. § 51.11.

■ The issue in this case is what statute or rule, if any, requires the trial court to appoint an interpreter for a deaf parent or guardian. We will first consider Appellant's argument that Article 38.31 requires the appointment of a qualified interpreter. The Code of Criminal Procedure applies to juvenile proceedings unless the Family Code provides otherwise. TEX.FAM.CODE ANN. § 51.17(c)(Vernon Supp.2004). Article 38.31 of the Texas Code of Criminal Procedure governs the appointment of qualified interpreters for deaf defendants and witnesses in criminal proceedings. *See* TEX.CODE CRIM.PROC.ANN. art. 38.31 (Vernon Pamph.2004). It provides:

> If the court is notified by a party that the defendant is deaf and will be present at an arraignment, hearing, examining trial, or trial, or that a witness is deaf and will be called at a hearing, examining trial, or trial, the court shall appoint a qualified interpreter to interpret the proceedings in any language that the deaf person can understand, including but not limited to sign language.

TEX.CODE CRIM.PROC.ANN. art. 38.31(a).

■ Article 38.31 implements the constitutional right of confrontation, which includes the right to have trial proceedings presented in a way that the accused can understand. *Salazar v. State,* 93 S.W.3d 339, 340 (Tex.App.-Texarkana 2002, pet. dism'd untimely filed). Prior to September 1, 2003, Article 38.31 applied to a juvenile, but not to his parents or guardian unless the parents or guardian testified. *See In the Matter of G.I.,* No. 05–95–01323–CV, 1997 WL 303754, * 3–4 (Tex. App.-Dallas 1997, no pet.)(not designated for publication)(holding that Article 38.30 did not require appointment of interpreter for juvenile's parents who did not speak English). In 2003, the Legislature amended Section 51.17 to include the following provision:

> (e) In any proceeding under this title, if a party notifies the court that the child, the child's parent or guardian, or a witness is deaf, the court shall appoint a qualified interpreter to interpret the proceedings in any language, including sign language, that the deaf person can understand, as provided by Article 38.31, Code of Criminal Procedure.

TEX.FAM.CODE ANN. § 51.17(e).

The adjudication and disposition hearings in this case took place prior to the September 1, 2003 effective date of the amendment. Therefore, Section 51.17(e) is inapplicable.

■ Appellant also relies on Section 21.002 of the Texas Civil Practice and Remedies Code in support of his argument that the juvenile court was required to appoint an interpreter. The relevant portion of Section 21.002 provides:

> In a civil case or in a deposition, a deaf person who is a party or witness is

entitled to have the proceedings interpreted by a court-appointed interpreter. TEX.CIV.PRAC. & REM.CODE ANN. § 21.002(a)(Vernon 1997).

Citing Section 51.17(c) of the Family Code, the State initially argues that the Civil Practice and Remedies Code is inapplicable to juvenile proceedings. We agree. If Section 21.002 governed the appointment of interpreters in juvenile proceedings, it would have been unnecessary for the Legislature to make Article 38.31 applicable to juvenile proceedings through amendment of Section 51.17. The Legislature recognized an obvious gap in the law and corrected it by the amendment.

■ We have found no rule or statute requiring the appointment of an interpreter for Appellant's mother. That is not to say, however, that the due process and due course of law provisions do not require it. Assuming without deciding that these constitutional provisions would require appointment of interpreter, we are unable to determine that a constitutional violation has occurred. The record before us does not reflect that Appellant's mother did not provide him with the support and advice expected of a parent. To the contrary, the record shows that the proceedings were interpreted for her and she understood them. At the conclusion of the adjudication hearing, the following exchange occurred between the juvenile court and Appellant's mother after the court informed Appellant that his disposition hearing was set for April 9:

> [The Court]: Mother, please come back on April 9th at 10:30 in the morning. If you would, come in about a half an hour early at 10:00 o'clock.

> [Appellant]: My mom said that her boss keeps getting angry at her because she has to come over to court and her boss doesn't believe she has to come to court and my mom is real scared of losing her job.

> [The Court]: Tell her that we will give her a letter saying that we require her to be here so she can take it to her work and show them.

At the disposition hearing, Appellant's mother responded when asked to identify herself for the record and she explained why she had not appeared that morning for the scheduled hearing. She had simply forgotten about the hearing and did not hear the juvenile probation officer knocking on her door. She also testified on Appellant's behalf. At the conclusion of the hearing, she interrupted the juvenile court to ask a question when he ordered her to pay child support to TYC. Appellant's mother also became involved in an argument with the juvenile court judge when he informed her that she would have to return to court on April 11 for a contempt hearing. When the court told her that she risked arrest if she did not appear, she threatened to sue him. With that, the hearing concluded. Under this record, no due process violation is shown. Appellant's sole issue on appeal is overruled and the judgment of the trial court is affirmed.